Good morning everyone. Before we turn to the cases that are before us this morning, we have as a panel some happy business to attend to. And that business comes to us in the form of a motion from Judge Cottinger. So I will now turn the podium over to him so we can make that motion. As you all know, the court can't function without members of the bar. And we always are happy to see the size of our bar enlarge, especially when they're enlarged by admission of what we call illegal therefore. I move the admission of Tara D. Elliott, who is a member of the bar in good standing of the highest courts in the state of Delaware and the District of Columbia. I acknowledge her credentials and I'm satisfied that she possesses the necessary qualifications. As Elliott is my walker, I believe I should recuse myself from voting on this motion because obviously I have to have my thumb on the scale. I'll second that. The motion is happily granted. Zoe, if you could step forward. Please raise your right hand. You solemnly swear that you will comport yourself as an attorney and counselor of this court, uprightly and according to law, and that you will support the Constitution of the United States of America. I do. Congratulations and welcome to the bar of the United States Court of Appeals. Zoe, welcome to the bar of the court. You've already been, I know, a great assistance during your clerkship to Judge Clevenger and also to other judges working with our court. So we've profited from your talents and abilities indirectly. Welcome to the bar of the court and we look forward to seeing you in court. Thank you, Your Honor. We will now turn to the cases before us today. Before doing that, I would just note for the record, we have a total of six cases before the panel this morning. Two of these cases are being submitted on the briefs without oral argument. I would just note those two cases for the record. The first one is number 2008-3009, Ayers versus the Department of Homeland Security. And the second one is number 2008-3132, Nobles versus the Office of Personnel Management. Again, those two cases are being submitted on the briefs without oral argument. The first case in which we'll hear oral argument this morning is number 2007-1520, Portfolio Technologies versus the International Trade Commission. And preliminarily, I understand that there are some exhibits. Now, there was a motion filed earlier to have visual aids be used at oral argument. And the court denied that motion to the extent that it involved visual aids, which were not part of the record before the International Trade Commission. I'm sure counsel from parties are aware of our ruling. We have not had a chance to examine this material until it was presented to us just now. Are the parties in agreement on this material? Or is there some question? Your Honor, may I explain? Yes. This is before we start. Yes, Mr. Beam and Mr. Reese. You'll have a chance to respond if there's any need to. The packet that we gave you this morning consists of materials that are out of the appendix and have appendix pages at the bottom, with the exception of the second page after the cover, which is page 11 of our principal brief. Okay. It has this page here? Yes, sir. 686, okay. Yes, sir. The request with regard to exhibits that we mentioned in our letter with regard to visual aids involved particularly physical exhibits, JPX1 through JPX10. And those are the ones that were referred to in the motion. Those were used at trial. We have done everything that we can to get those before the court, as I believe Your Honors know. And yesterday, when I got a copy of this court's order concerning visual aids, I placed phone calls and left messages for two of the counsels for the International Trade Commission, asking them to bring those original exhibits with them. Mr. Reese, for the commission, has acknowledged receiving my message. I have not heard from him with regard to whether he has brought those exhibits with him or not. This is like a district court proceeding, ruling on evidence. Well, certainly, Mr. Dean, Mr. Reese, do you have any problems with this item? Your Honor, understanding that it's, as Mr. Dean represented, it comes right out of the appendix, I wouldn't have an objection except that we would all appreciate that it's obviously just a few pages of whatever document it comes from. All right. So this will be available for use during oral argument to the extent Mr. Dean or other counsel wishes to refer to it. Now, the second item, the physical exhibits that Mr. Dean referred to, again, if there are physical exhibits that were part of the record, do you want to use them? Well, Your Honor, I would very much like to use the actual exhibits that were moved into evidence at the International Trade Commission. But those are in the possession of the International Trade Commission, and they are only here if they brought them. And perhaps we should hear from them on that. I have with me the actual products, the exact same products. Is that necessary? I mean, you have visual depictions, correct? Your Honor, I do not intend to use the physical exhibits during my principal argument. They were here. The intention was only to the extent that they were. We had a need for them? Yes, sir. Yes, sir. Can I ask a further question? I guess I do, because I noticed, for example, the materials you just gave us, page 11 is marked confidential. The matters that are coming from the exhibits are not marked, the record is not marked confidential, but the record itself is not. The brief of the International Trade Commission is not marked confidential. All the other briefs are. How much of this is confidential? I mean, we always have this problem in the case of the Federal Commission. All right. Your Honor, the... anything that's in the brief of the Commission is not marked confidential, and we assume that for your concern, because it duplicates a lot of the factual material that's in your brief, it is marked confidential. I don't believe that anything in any of the briefs, as far as I know, is confidential. The PGI's... What about the decision below? The initial decision of the Commission, which was replaced by another decision, the initial decision was released to the public, if you will, by saying that it was no longer proven. That is the only difference, Your Honor, between the blue confidential brief and the blue non-confidential brief, is the extent of the Commission's opinion. Is the Commission's opinion still considered confidential by you? There are... yes, sir, there are... Why don't we write an opinion in which we describe what the Commission did? Do we have, you know, blanks in our opinion? As far as I'm concerned, Your Honor, the only things that are in there that are confidential are economic, and because of economic prong, which was found by the Commission, that issue is not on appeal. As far as I'm concerned, none of the technical evidence, none of what we're going to be talking about here today is confidential. Do we know how the intervener feels? Oh, no, I'm sorry. Oh, no, it's good to get these houses. We've got a big audience here. You know, I always worry if I start asking questions and I ask a question that's batty, you know, right in the heart of what everybody agrees is confidential, then I put my foot in it. What's the answer? Good morning, Your Honor. I'm James Shaler. I represent Church and Hawaii, and from our perspective, I don't think it's confidential. Thank you. I think we're all... I think that's itself to get these matters out of the way. One final thing I noticed, I see that counsel on the Hawaii side is splitting their time, eight minutes and seven minutes for the intervener. Is that correct? Yes, sir. Eight minutes for the ITC and seven for the intervener. Okay, fine. I'm speaking on behalf of myself and my fellow members of the panel. When counsel does that, it's always helpful to the extent you can to avoid duplication in your arguments. It makes for a better flow. All right, with those matters out of the way, we will proceed. Mr. Dean, you can start your argument whenever you're ready. I see you reserved three minutes for a vote, correct?  Okay, go ahead whenever you're ready. Your Honors, with me this morning are Paul Kozacki, Jerome Whitesell, and John Linser, all of whom are on the brief. May it please the Court. The claimed invention is a prophylactic. Right. It has a second pouch that rubs against the gland's penis. There are two parts of the invention. There's the first pouch, which resembles a standard straight wall condom, and there is a second pouch that sticks out from the first pouch. I see one mistake here, sir. Is it an error in claim construction? Is it an error in understanding the way in which the device is operated? What are we talking about? Yes, sir. Yes, sir. What's the reversible error? The reversible error is the additional construction that the Commission did in its final opinion. There is no dispute between the parties as to the construction that the Commission did in its first opinion. Let's break that in. If there was a further construction of the claim by the Commission, you're not arguing that the Commission lacked the power to do that, right? I am not arguing that. When it goes up to the Commission, they can take the case for it. That's correct, sir. What aspect, which limitation in the claim was misconstrued, and if so, why? Your Honor, that goes right to the heart of the question here. That's why I asked. Yeah. The limitations that the Commission applied in its final opinion are not in Claim 1. They're not in any of the asserted claims except, arguably, Claim 18. I would refer you, you have the… The limitation you're talking about… Yes, sir. …would be very specific here. Yes, sir, exactly. At A14 of the Commission's final opinion. About two-thirds of the way down is where the error begins. I'd like to… If you could give us the text line on… Just the text on that particular page. I'm sorry, the text… Read the text on that particular page. Yes. This is what the Commission says. We agree with C&D and MedTech that this is a misapplication of the construction of elongated tubular portion adopted by the Commission. It continues. The valleys of the twisted pleasure… Are you with me in the middle of this long paragraph? The valleys of the twisted pleasure are not part of the tubular portion of the condom. There is nothing in the valleys of the spiral region that is tubular in shape under an ordinary reading of the claim terms. There is nothing like a circumference in the valleys of the spiral region. It sounds like a fact finding. Well… You're looking at it as a case of deduction, right? It does sound like a fact finding. And this is in the part where they're talking about infringement. It's after the part of the opinion where they're talking about claim construction. Our complaint, if you will, with this part of the opinion, is that there are no valleys in Claim 1. There are no valleys in any of the claims. There are no valleys in the Commission's original construction. Is that what the Commission is saying? That they're looking for a valley in the matter of a claim? Or they're saying there's nothing like a circumference? Well, they say that there's no circumference in the valleys. Why, you know, the requirement of a circumference emanates from the claim language, doesn't it? Yes, sir. So if they're looking for a circumference, that's an okay thing for them to be doing. Because if the claim language requires a circumference, they've got to find one in order to find that limitation met, right? That's correct, Your Honor. And the Commission did find the circumference. The only circumference that is mentioned in Claim 1. The only circumference that's mentioned in any of the claims. What they did here is they added an additional limitation that there be a circumference in the valleys. And there are two parts of a claim construction error in that. One is to impose a requirement of valleys in Claim 1 and the other claims. The other is to require, in addition to a circumference in the first pouch, which the Commission found, to require that there be a circumference in the valleys, as they call it. Your Honor, it might be helpful to refer to the figures, if I could refer you to the first page after the cover sheet in these materials that I've handed out to you. And look particularly at the figures. Excuse me. The condom, as I mentioned, has a first pouch. That first pouch is defined to include the open end and the closed end, and to have a generally constant diameter. It is a tubular portion. And the phrase elongated tubular portion and first pouch are used interchangeably in this case. The novelty of this claim dimension is that there is a second pouch having an entrance that allows the inner surface of the second pouch to move against the glance penis. And it is undisputed, Your Honor, that the inner surface of what the interveners call spirals moves against the glance penis. And there needs to be, correct me if I'm wrong, in all the claims in suit, there are certain claims in suit, there needs to be an entrance from the first pouch to the second. That's correct, Your Honor. And the commission, again, correct me if I'm wrong, sir, found, as a matter of fact, that there was no entrance. That's exactly right. For any of the accused. That was their finding, and that was erroneous because of the issue. Even if they were wrong on this circumference issue, Your Honor, we were talking about a moment ago, if they were right on the entrance issue, you'd still have a problem, correct? That's true. You'd have to meet every limitation. Yes, that's true. But maybe, because of the time, maybe you could explain why the commission, or try to convince me why the commission was wrong when it said, as entrance is defined, or as they defined it for claim interpretation purposes, that limitation was missing in the accused home. Where in was the commission wrong in that? Where they made the fact finding, ultimately, was at page A-17, and all the claim construction that we're complaining about is concentrated between pages A-14 and A-19. At page A-17, about halfway down, at the end of the long paragraph that continues from the previous page, the commission states that it does not rely on non-infringement for any failure to find elongated tubular portion, generally constant diameter, or first pouch having a circumference. That is the circumference that I mentioned is the only circumference in the claim. The commission continues, however, having found that the valleys of the spiral region of the twisted pleasure do not meet the definition of elongated tubular portion, we find that as a result, limitation of an entrance or movement through it is not met. They're blending the circumference issue and the limitations issue, aren't they? Yes, sir, and the faulty premise that explains the whole error here, the faulty premise of claim construction, is that a first pouch having a circumference means a first pouch having a constant circular circumference of membrane at every cross-section from the open end of the condom to the closed end of the condom. So what's the second pouch that you're accused of? If you would turn, Your Honor, to the first color page in the handout material, this is figure D, it's at A4731, and the next sequence of color figures in here is A4731 through 4743. Those show, in spiral, the twisted pleasure, those are the two accused products, and the pleasure plus, which is my client's product that is conceded to practice patent claims. Just for the sake of completeness, the last two figures in this packet are exactly what the intervenors presented to the Commission as RDX1 and RDX2. What figures are those? There's no label on these, Your Honor, but the last two figures in the packet, 4820 and 4824, yes, sir. RDX1 and RDX2? Yes, sir. Isn't the finding that the value part of the second value pouch and not part of the first pouch and bonding between the first and the second pouch, isn't that really a factual determination by the Commission, not a determination in the claim construction? It depends entirely on claim construction, Your Honor, because the only way the Commission was able to get there was to require that in this region where the second pouch is, that that be a tube. That was their faulty premise, and a tube has a circumference of material. A tube has a diameter that's measurable all the way around that circle that they insist must be present. But could it be the entrance of the pouch itself which is circumferential? Is that what they're talking about? Your Honor, what they're focusing on is the way that the Commission defined the elongated tubular portion in the first opinion, with which we agree, is that the elongated tubular portion is that which is everything except the second pouches. So their argument is, and they're very fond, the intervenors are cutting up on us. So everything that they've presented, they haven't presented anything that even shows what they call the spirals in the products. Instead, they've cut them out. And then they say if you cut out the second pouch, there isn't enough left of the first pouch or elongated tubular portion to define a continuous circumference, a circle of material. Now both of those exhibits of 4820 and 4824 are exhibits of the intervenor. These are from their exhibits of the intervenor. This is what they presented to the Commission as their exhibits. They have since explained to this court that they're actually part of larger exhibits, RDX1 and RDX2, which are in the appendix, and I'm sure they will tell you about. Now, my point, and I think this is important, is even under RDX1 and RDX2, there is infringement. If you will turn to those at 4820 in the Twisted Pleasure, what the intervenors have left here is the straight walled shaft portion of the condom and the closed end. Those are required to be defined as part of the first pouch or elongated tubular portion. That's in the claim. And then they've left what they say are the valleys in between the second pouches. So here they have cut out the second pouches, they say. Or they call them spirals. Some of them are tubular. Some of them are bulges in the side. For example, I've given you two examples in this packet of materials. The first one in this packet is Figures 4 to 6. That has a fully circular, annular second pouch. On the next page is a second pouch, and this is Figures 1 to 3, there's a second pouch that is a bump, it's a bulge that extends out to one side of the condom. Figure 10, Your Honor, if you refer to the full patent, which of course is at the end of the blue brief, if you look at the figures, Figure 10 is on the last sheet of figures, and it has a larger second pouch that extends all the way around the condom. And in none of, well, I take that back, in several of these preferred embodiments, and in my client's product, it is impossible to remove the second pouch and still find a circumference of membrane that goes all the way around the cross-section that goes through the second pouch. In fact, what they're insisting on is an impossibility, it's a contradiction within the claims, because the second pouch is defined by the claim to extend outwardly of the first pouch. So, of course, if you remove the second pouch and you look at what's remaining, you're not going to be able to find a circular circumference of material at that cross-section. That's completely contrary to the claim, and that's claim construction. It was reconstruction that the Commission did in its second opinion, and it was erroneous. Now, Mr. Bean, you're well into your rebuttal time. We'll restore your full three minutes. Thank you, sir. While we hear from the Commission and intervene at this point, Mr. Reese. And you have eight minutes, correct? Mm-hm. Thank you, Your Honor. May I please report? Picking up where Mr. Bean left off, I think this is exactly the problem we have with this case, if you look at 4820 and 4824. And there are actually two points. I'd like to make if I have the time. The first is that it's not simply the entrance limitation that's lacking here. It's also the movement limitation. It's a point that isn't captured by Mr. Bean, but it creates a separate and significant problem. And in a nutshell, that is that in this condom, the entire distal end of the condom is moving. It's folding. It's freely folding. It doesn't meet the claim limitation of the movement limitation. I can address that first, or I can address that after. Which part of claim one do you refer to? I'm actually referring to the movement limitation that refers to the back-and-forth movement and in-and-out that appears in all claims. And this is the limitation in claim one. Line 30, column 7. Exactly, Your Honor. This is having the inner surface movable through said entrance and against the gland's penis for movement, back-and-forth, thereon. And that's the point on the movement limitation. But if the kid's device meets that limitation, it also supplies additional movement, right? Well, that's just it. No, Your Honor, I would submit that it doesn't meet that limitation. And that that limitation is very particularized. But if the entire condom can be sliding back-and-forth across the penis through a cortex, it would seem to me that it's going to meet the limitation of the claim, but it's going to have additional movement above and beyond the movement claim. Well, the movement actually claimed is not the movement that takes place in the condom. The movement that's claimed is this particularized movement where the pouch inverts radially and then moves back-and-forth. And it's not the entire end of the condom collapsing, folding on itself. But you get to the other side of the point. The claim limitation called for stretching the lower back, right? And some of the kids' devices not only stretch their lower back, they stretch their shoulders, too. As long as it stretches your lower back, it stretches. In fact, it does more than the claim requires. It's not perfect. But it's actually the manner, Your Honor, I would submit, it's the manner in which it performs this stimulation function. I mean, this is actually an inventive concept of the 004 patent. This is all talk evidence, right? I mean, there wasn't any movies of these things in use, right? There were physical exhibits. There were some demonstrations. Demonstrations on this point, as well. Well, so Your Honor, I'm just curious to pick up on Judge Cutler's question that the movement, that whatever movement there is in the accused devices, or the two accused condoms, it is not the kind of movement, there is none of the movement that is required in the claims. Is that what you're saying? Exactly, Your Honor. And it's also not through an entrance. So it's these two-part problems. You don't have the movement in any event. And we've cited, and the opinion cites the variety of evidence on that point, including the testimony of Dr. Potter, who has significant experience in the design and operation of condoms, as well as Dr. Reddy, who's the inventor of the patent. And PTI would ask you to reweigh that evidence and credit its witnesses over all others. I submit those are quintessential fact-finding functions. So there's a problem with the movement limitation, and there's also this additional failure to meet the entrance limitation. And I think you've heard Mr. Bean... The entrance limitation proceeds from the notion that there has to be a defined boundary between the first pouch and the second pouch? Exactly, Your Honor. Exactly. It has to be first pouch material, which is sort of your conventional-shaped condom to perform the function of an ordinary traditional condom. Then there's a second pouch on top of that. And the definition that all parties agreed to was the boundary between the first pouch and the second pouch. And PTI's whole theory of the case was that the movement that took place here took place through these valleys in the twisted pleasure and tendril in the inspiral. Thus, placing the particularized movement through an entrance in that baggy end of the condom. And it was their theory of the case that even brought this whole issue into being about, well, if you're claiming that you're going through first pouch and second pouch material, where is the first pouch material? And the Commission looked at this. The ALJ originally, Your Honors, had a theory of theoretical lines. We didn't have these the first go-round. It was literally theoretical lines, he said, that created the tubular pouch. Sort of an imaginary tubular pouch that continues underneath. Commission remands it, rejects that. And what does it get back? It gets back this new theory. Oh no, there are these thin wisps that now constitute this tubular portion. Counsel is suggesting that the wisps in 4820 and 4824 are the same as the elongated tubular portion you see below it. But I have a question on two of those. Counsel pointed to A4820 and A4824. You're just against the recognition of the tape in this argument? Oh, yes, sir. Whose exhibits are those? These exhibits... These are, you're absolutely right, Your Honor. And there was some debate below about if you're placing the entrance, as PTI did, it was the sole theory of the case, if you're placing it within the spiral region, well, what exactly is the shape or size of that entrance? And the testimony that Commission found and credited was the testimony of Dr. Potter, with his experience and background in this area, who testified that, first of all, the entire structure, if you will, above, on 4820, above the tubular portion and to the tip, his testimony was that that whole thing was the bulging end. That was the second pouch. He said, but if you really have to, as PTI insists, try to cut it away and create some theoretical specialized movement through an entrance, what you would get, if you have to cut it away, under their best case, is this material. This is the low point of those spirals. And so this is what the Commission was looking at. It credited that testimony, and I think that was a reasonable judgment. There's evidence in the record on that, and I'm excited to read. It credited that testimony, and it found that under no, it even says it in the opinion, we've now replaced theoretical construct with thin whisks. And we're still in the land of the imaginary. The Commission didn't see any tubular portion in this part, and fundamentally, and that's what it found, that there was no tubular portion in this area. So it wasn't inventing values. The tubular portion comes from a constant diameter motion, right? I'm sorry, your honor? The tubular idea comes from a constant diameter motion. Yes. If you look at the placer plus, which is in the package here, page 4742, figure Q, it's just one or two right in front of what you were talking just earlier about. My understanding is that it's agreed by the parties that the placer comes embodied in the O4 path. Is that right? Your honor, the placer plus. Here, the placer plus of figure Q. Figure Q. Thank you, your honor. It's an... It's a placer plus. Yes, your honor, that's the commercial part. And if everybody agrees that that embodies the O4 pattern, right? So the O4 pattern reads on this on the placer plus? That's what I thought everybody agreed to. Actually, not exactly. I don't want to be disagreeable. That actually was ultimately not litigated before the commission. But I'm following you. Yeah, when I read what's in the brief, I understand people who say, well, if you want to really know what... something that would be an accused device under the pattern, well, look at the placer plus. And I look at it and I don't see a tubular portion that's generally constant, you know, from one end to the other. I use that to illustrate the point. Obviously, we're not in... Well, the point would be if the placer plus reads on the pattern and it doesn't have a tubular portion that's generally constant from the open end to the closed end, then why would you require the same of an acute device that somebody else made? The commission recognized that a number of the preferred embodiments identify a tubular pouch with gaps between the tubes. And in fact, you'll see it in the patent, figure one, for example. In fact, all the figures. But figure one in particular, figures six in the patent is a good example, where you have pouch material and between that you have tubular portion. And the pouch material that you see, if you use whichever your honors wishes, multiple pouches, the material, there's significant, there's material... The commission didn't require that there be some full continuity throughout the condom of a circumference or a diameter. But where there's tubular portion, the commission examined it closely for circumference, for diameter, for what's the nature of the structure, is it performing what the tubular function is supposed to be performing, and didn't find that. But here, I'd submit, Your Honor, that there's substantial... What I'm trying to say, Mike, is in the finding or not, there's nothing like a circumference in the boundaries of a spiral region of an acute product. If you look at the placer plus, there's nothing like a circumference in the second pouch. Right? In the second... You can look at that picture again on figure two. Well, actually, again, we're comparing it to a commercial product here, but I'd submit that the material you see, see that this is 4742, that's not in blue, this material, I would submit, Your Honors,  this material is wholly different from the material you see at 4820. That's the material there. That's the difference, Your Honor. The material is a continuation of the tube. There is an opening... I think an argument could be made in the commission in looking at the pattern to say, well, what the pattern is really covering is, if you imagine a hot dog, and then you put a ring around the end of the hot dog so that you go entirely around the circumference of the hot dog with the second pouch, if you will. Yes. Now, if... And we all know that the claim isn't limited to that, right? Right. The claim can read on a hot dog that's got just a bulge on one side and not a complete ring around the end of it. And what I was trying to get at is, it looks to me like the Pleasure Plus is exactly that. It's a hot dog with a bulge on the side. And so there's no circumference in the bulge. And so I was wondering whether it was right, as a matter of fact, to find that the two accused products don't infringe because they don't include something that the Pleasure Plus doesn't include. That's all. I understand, Your Honor. And I would submit that the material that you're looking at, and this is exactly what the commission is considering, and as I said, it's a question of degree. You're looking for, is there a diameter or not? Remember, there are some of these embodiments for which there'll be no tubular portion, where it would be an annular pouch, and there's no tubular portion in that region. The commission recognized that. In those instances, you get tubular portion that continues to the annular pouch, stops completely, no circumference, no diameter of tubular portion, your second pouch material, and then a resumption of the tubular portion. And the commission recognized that there could be variances in it. That product is presumably not infringed because it's not a first pouch. No, that's actually claimed. Those are some of the embodiments. That's figure four. And the commission said that all the embodiments were claimed, and its construction of the claim terms was made with that very much in mind. Figure four is the embodiment of the ring, right? That's right. Right, the notion there being that the ring is the second pouch. There's no, the tubular portion continues to the second pouch, and then it stops, and then it continues to the end of the condom. So I'd submit, Your Honor, that... It would be better if you used about seven and a half minutes in addition to your regular time. So that means, Mr. We had questions. At least Mr. Sheldon was about trying to get things out of you in about three minutes. I'm sorry. Do you have anything to add, Mr. You had questions. That's, you were keeping well before voting. Do you have anything to add, Mr. Yes, I do, Your Honor. There are two claim limitations that are missing from the accused devices, one structural, one functional. On the functional, I'd like to respond first to Judge Clevenger's question. The commission correctly noted that in the Oval IV patent, the functional limitations are identified as differentiating the invention from the prior art. This appears at page nine of the appendix. The patent office cited prior art, including Haines, in which one or more pouches had already been superimposed upon a primary pouch, and that art is distinguished as failing to provide enhanced sensation through stimulating targeted regions that are sensitive. And the rejection of the two Haines references in the file record was overcome by arguing that the Haines 903 doesn't teach the idea of a pouch having an inner wall that would penetrate through an entrance to stroke a limitation. And the commission noted in footnote four that all the independent claims have the same language, and that this language was added to induce the issuance of the patent. Now, what this is, is this is targeted stimulation, and it's a feature of every claim, and it requires a movement radially inwards and back and forth within the confines of an entrance. And this is where it differs from what Judge Clevenger was talking about. PTI's own expert, Dr. Wolfe, he testified at pages 433 and 434 of the transcript, that's at 1694 of the appendix, that the principal difference between the invention claimed in the 004 patent and the prior art is that the second pouch is designed to stay in the vicinity of the most sensitive part of the penis and provide localized stimulation. The commission found, as a matter of fact, that the twisted pleasure does not practice the patented movement because the entire far end of the twisted pleasure wrinkles, folds and moves freely over the entire distal shaft and head. And to respond to Judge Clevenger's question, the point is that the patented invention is targeted stimulation. The first pouch is essentially the old condom, and the old condom rips so that it doesn't dislodge. It's not targeted, but it's targeted to stay on the target. Exactly. That's what you're going to do. If it was just targeted, then I would come back to you and say, well, if the claim requires me, the girl has to hit the target. So as long as one arrow hits the target, it can't be missed. I completely agree with that, but I think the claim requires something different. It requires the first pouch to hold the condom so it doesn't dislodge. So it's holding the condom. The first part of the pouch is holding the second pouch that's a wider diameter over this targeted region. How does the pleasure bus get that condom? I can understand how, if you've got the hot dog and you put a rubber band around it, you get that targeted movement effect and have it locked there, but what happens in the pleasure bus? In the pleasure bus, it's like figuring one on the patent. What happens is all this is stationary. All the white part is stationary, and the blue part is moving in and then back and forth. So the only part that's moving is the blue part. All the white part is stationary. So that's what the whole idea of the invention is. You put a first tubular portion that closely fits the penis, and then the second pouch is the loose part that rubs. So the first pouch is not moving to stimulate. It's the second pouch that's moving to stimulate. And that's another reason why the valleys are very plainly not part of the first pouch. If I could take the court back to figure K. This is not evidence of infringement. This is evidence of non-infringement. Sure. Figure K is 4-7-3-8. This is P.T. Oz's demonstrative exhibit. If you take a look at this dotted line here showing the generally constant diameter that defines the first pouch, they're saying that this valley, which is clear and not colored, is part of the first pouch. But if you actually look at where the fabric is, it's all outside that dotted line. It's wider than the generally constant diameter. If you take a look up here to the left where you see clear fabric, it's to the left of the dotted line, and on the bottom right, it's to the right of the dotted line. If you take a look at the pleasure plus, the dotted line informs quite closely That's figure Q, 4-7-4-2. The dotted line informs quite closely to the first pouch. So that's why the pleasure plus practices the invention, because it does have a generally constant diameter because the clear fabric informs to the dotted line, and the colored blue fabric is all that moves. In figure K, all the fabric in the valley is moving, and that is another indication that it's not part of the first pouch. It's part of the second pouch. I think that's fine. Thank you, Mr. Trout. We have your argument. And you'll have some other ones to read. Let's see. The other side, you had a total of 18 minutes on your initial argument. It looks like the other side has had, let's see, 18 plus 21. We'll give you five minutes. Thank you, sir. The limitations, the arguments that have been made by the intervener and by the commission do not appear in Claim 1. I would like to show you where in A claim they appear to be talking about, which is Claim 18. And I refer you to the back of the blue brief. It's not quite the last page, but it's the third to the last page. It's at A-59, Claim 18 is in the right column. It's column 8, almost all the way at the bottom. And I will refer you, there are four subparagraphs, and I refer you to the third subparagraph, which states portions of said tubular portion located between each of said second pouches. Those are the valleys that the interveners and the respondent have been talking about. And with regard to prohibiting motion, if any of Mr. Chalit's argument is relevant here, it's only to Claim 18, because as this subparagraph continues, these portions, or what they call valleys, maintain the constant diameter throughout the length of the tubular portion to resist stretching of the tubular portion, thereby maintaining the shape of the second pouches. So when Mr. Chalit's talking about everything moves, maybe that's relevant to Claim 18, but it is not relevant to Claim 1 or any of the other claims that are asserted. What about the targeted stimulation? There's nothing about targeted stimulation in any of the claims. What about in the specifications? Your Honor, on Dr. Potter's cross-examination, he admitted that there is nothing about fixed or stationary or anything equivalent to that anywhere in the patent. I thought that the file of history and some of the specification indicated that the advancement over the prior work for the patent was that it could target a particularly sensitive area of the penis to guarantee that that's where we're going to have the movement for the stimulation. The intervener has represented that the prosecution history, their arguments were made to prohibit movement. That's untrue. What is added in the prosecution history is the entrance. The novelty here that allowed this patent to issue is the fact that there is a second pouch. If you can picture it like this, you have your elongated tubular portion. That's the first pouch. And you have a second pouch that extends outward in the oven. That's what's shown in the figure on the very front of the patent, which is Fig 2. The inner surface... Your Honor, it's undisputed that those prior art devices do not have a second pouch at all. And if they do not have a second pouch, they cannot have a second pouch with an entrance. And they cannot, therefore, have a second pouch to move through an entrance. Now, the intervener has argued that there's movement back and forth. And there is. The claim requires that. If there is also some movement back and forth in some of the prior art, that is not a basis for them to argue non-infringement. They vigorously contested validity, and they dropped that. That's not presented here on the appeal. So there might be some similarities between the claim you mentioned and the accused's products and the prior art. Of course, that's true. They all have an elongated tubular portion. That's the nature of a comment. That's what the District Court found in 1999. If I come back, it would be helpful to me, at least, if you could give us a couple of minutes to... to listing one way or the other. I still come back to the point that it strikes me that for you to win, you have to say that the IPC may eliminate stack replacements. Because it seems to me that we're agreed that there has to be one... that is defined by a border of some sort between the first and second pouch. The IPC looks at these devices and says, I don't see any defining line, I don't see any entrance. And if it's a fact question, then you've got to... Actually, Your Honor, I don't believe that the Commission did say that it could not... Well, maybe they did say that they could not find a boundary between the first and second pouch. That's why I'm glad you raised that, because they didn't say that in exactly those words. But it struck me that for me to be able to put a rationale on why they decided the way they did, even in the light of the Blazer Plus, because in the Blazer Plus, you see a dividing line, you see a boundary, because there's a clear boundary between the two shaft-like areas on the side of both. It struck me that the Commission was looking for a border, a wall, something like that. Well, as far as where the entrance is, that's shown in these figures. If you look at figure F, which is A4733, in spiral, on the left side, you see the second pouch. I'm sorry, that's on the right side. On the left side, what lies underneath that second pouch is the entrance, and you can see where the boundary is. That's the boundary between the first pouch and the second pouch. The colored one you're looking at? It's at A... If you point at that, it's not your head figure. Are you looking at the figure on the left or the right? Well, both. The figure on the right shows the second pouch. The figure on the left shows where the entrance is. In other words, it's the boundary. It's very clear. There has to be a boundary between the first pouch and the second pouch. Otherwise, there would be gaps, and it would be anathema and a condom to not have the first pouch and the second pouch meet. So the way it got... on the wrong track was through a faulty premise. Their logic is attractive. But their premise is wrong. Their premise is that you have to have a tube in the area where the second pouch or second pouches exist. That's how they got to that there has to be a circumference in the valleys. Don't all the drawings in the patent show a tube through the second pouch area? They show an elongated tubular portion. Your Honor, I would submit to you that in this case... Right, but I just came up with... In fairness, we'd have to construe the claims as, you know, interpreted less through the writing than through the drawing. Yes, sir. And it looked to me like there was a tubular portion from front to end, running entirely through the claimed condoms, regardless of where the pouch is. There is an elongated tubular portion, but there's always a second pouch to extend out from that. So there's never a continuous tube. Thank you, Mr. King. The case is submitted.